OPINION
{¶ 1} Appellant, D.F., appeals the judgment of the Franklin County Court of Common Pleas, Probate Division ("probate court"), in which that court determined that appellant is a mentally ill person subject to hospitalization by court order, pursuant to R.C. 5122.01(B)(3) and (4), and committed her to the Franklin County Alcohol, Drug Addiction 
Mental Health Services Board ("ADAMH"), for outpatient commitment through Community Service Network ("CSN") at Twin Valley Behavioral Healthcare, Columbus Campus ("TVBH-CC"), for a period not to exceed two years. *Page 2 
 {¶ 2} Appellant advances two assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT'S DECISION COMMITTING APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT'S [SIC] ERRED IN ITS DECISION COMMITTING APPELLANT BECAUSE THERE EXISTS A LESSER RESTRICTIVE ALTERNATIVE.
 {¶ 3} Appellant is a 40-year-old resident of Franklin County, who has been diagnosed with Psychotic Disorder (NOS) and Delusional Disorder, Persecutory Type. The probate court first ordered her committed for 90 days to TVBH-CC in 2006, after her brother filed an affidavit alleging that she was mentally ill and in need of hospitalization. She appealed that commitment order, and this court affirmed. See Franklin Cty. ADAMHBd. v. D.F., Franklin App. No. 06AP-609, 2006-Ohio-4786. Later, the probate court granted TVBH-CC's application for an order to forcibly administer psychotropic medications to appellant. She appealed, and this court affirmed. See In re D.F., Franklin App. No. 06AP-1052,2007-Ohio-617. Eventually, TVBH-CC discharged her.
 {¶ 4} On November 29, 2007, TVBH-CC psychiatrist Dr. Mark Blair executed an affidavit in which he averred that appellant had stopped taking her prescribed psychotropic medications on September 14, 2007, and shortly thereafter began to experience symptoms of psychosis. Based upon Dr. Blair's affidavit, the probate court issued an order finding probable cause to believe that appellant is a mentally ill person subject to court-ordered hospitalization, and ordering ADAMH to temporarily detain appellant. On December 6, 2007, Dr. Marion Sherman, TVBH-CC's Chief Clinical Officer, and Dr. Billy Ray Hunter, appellant's treating psychiatrist, filed an application for authority *Page 3 
to involuntarily treat appellant with psychotropic medications. The probate court set the matter for a hearing to be held together with a full commitment hearing.
 {¶ 5} At appellant's request, the probate court appointed Dr. J. Michael Oaks as an independent expert. Dr. Oaks examined appellant and, in a report filed December 14, 2007, he opined that appellant was "grossly psychotic and unlikely to improve without the requested treatment." Following a hearing held on December 14, 2007, the probate court found appellant to be a mentally ill person subject to court-ordered hospitalization, and authorized TVBH-CC to administer psychotropic medication to her.
 {¶ 6} On February 22, 2008, Dr. Hunter issued a report, in which he related that appellant "continues to have delusional thoughts, but her behavior in the hospital while taking medications has significantly improved. * * * She continues to be a risk in the community as long as she is not taking her medications and being compliant with treatment. She has not been a risk in the hospital because she has taken the medication and has been compliant after the forced medication order was put in place." Dr. Hunter opined as follows:
 It is my opinion with[in] a reasonable degree of medical certainty that [D.F.] currently suffers from a severe mental illness with a substantial disorder of thought and perception and behavior which grossly impairs her insight, judgment and behavior. She lacks insight into her mental illness and the need for treatment. She has refused to consider medication treatment. However after having a forced medication order she has been compliant and it has made a big difference in terms of her behavior. She has not been aggressive in the hospital while being on medications but she continues to have her delusional thoughts. Without being on medication she would pose a significant danger to herself and others.
 It is my opinion with[in] a reasonable degree of medical certainty that the least restrictive environment for [D.F.] that *Page 4 
provides adequately for her treatment needs and adequately safeguards the public is outpatient commitment to CSN which is an outpatient component of TVBH-CC. A treatment plan has been derived by CSN and should be available for review to best monitor the patient through wraparound services and medication drops and having the patient come in once a week to their center for assessment.
 {¶ 7} On February 26, 2008, with appellant's earlier commitment order set to expire on March 13, 2008, TVBH-CC discharged her to live with her father. Based on Dr. Hunter's February 22, 2008 report, TVBH-CC filed an application for continued commitment of appellant to its outpatient facility, CSN. ADAMH informed the probate court that it supported the recommended change to an outpatient setting.
 {¶ 8} On March 5, 2008, a magistrate of the probate court held a hearing on the application for continued commitment. Present at the hearing were attorneys for appellant and for ADAMH, as well as witness Dr. Oaks. The record reveals that appellant was notified of the hearing but chose not to attend.
 {¶ 9} The parties stipulated to Dr. Oaks' expert qualifications. Dr. Oaks testified that he has examined appellant on several occasions during her stays at TVBH-CC. He last examined her on December 12, 2007, and has reviewed Dr. Hunter's most recent report. He testified that appellant was hospitalized in May 2007 because she had developed paranoid delusions that white supremacists, Nazis, and members of organized crime were monitoring and persecuting her. As a result, she became isolative, her self-care deteriorated, and she reportedly assaulted her father. She was diagnosed with Delusional Disorder, Persecutory Type. While her condition is chronic and she firmly retains her persecutory beliefs, she improved substantially while in the hospital, including in the areas of self-care and aggression. *Page 5 
 {¶ 10} Dr. Oaks opined that appellant suffers from a substantial thought disorder that grossly affects her judgment and behavior, and she will require ongoing psychiatric treatment and antipsychotic medications for the foreseeable future. She retains her chronic delusional thoughts, but when she cooperates with treatment she possesses improved judgment. Dr. Oaks opined that appellant still represents some risk of harm to others, but "her main risk is to herself." (Tr. 20.)
 {¶ 11} Dr. Oaks explained that the primary component of the recommended outpatient treatment is "intensive case management, where she has frequent visits of a case manager monitoring her medication compliance and self-care." (Tr. 21.) He agreed that CSN can accurately be described as an extension of the hospital setting and stated that it provides "[m]uch more intensive [care] than one might normally get in standard outpatient psychiatric treatment, much more frequent contact and closer monitoring." (Tr. 21.)
 {¶ 12} Dr. Oaks stated that it was "probably" more favorable to treat appellant on an outpatient basis than on an inpatient basis because home is "a more natural and comfortable environment." (Tr. 22.) When asked whether appellant could be effectively treated at home and whether this was the least restrictive alternative, Dr. Oaks replied thusly:
 Well, so far, the evidence is that she can. Now, she could very well suffer an exacerbation at any point, lapse into noncompliance and become acutely ill again. And in all likelihood in the future, she will require more hospitalizations, but at least for the current time she seems to be doing well in her present setting.
(Tr. 22.) *Page 6 
 {¶ 13} Dr. Oaks explained that a number of options exist for dealing with a relapse, short of inpatient hospitalization, including urgent consultations with the outpatient psychiatrist, increasing the dosage of medications or adding medications to the regimen, increasing the frequency of in-home visits with CSN outpatient treatment team members, or increasing the frequency of appointments at the CSN outpatient mental health clinic. These options would be available to appellant by virtue of her commitment to CSN. Dr. Oaks also related that "the difficulty is that [appellant] has shown that she's not able to avail herself of those options without the authority of the court behind them." (Tr. 28.)
 {¶ 14} On cross-examination, Dr. Oaks stated, however, that a relapse would most likely result in another inpatient hospitalization. Also on cross-examination, appellant's counsel asked Dr. Oaks whether appellant's mental health power of attorney, appointing her father as her attorney-in-fact, would serve adequately as the least restrictive alternative, instead of an outpatient commitment order. Dr. Oaks replied that he did not view mental health powers of attorney to be particularly useful. He noted that such powers of attorney may be revoked at any time, unless the declarant has lost her capacity to make informed decisions about her mental health. Absent a court commitment order, he said, there is a presumption of capacity. "If the petition is not granted today and she's out from under commitment, she could revoke this document today." (Tr. 41.) In the event that appellant began to decompensate, if she stated she had revoked the power of attorney, this would put at issue appellant's "capacity" to do so, which would lead to a court hearing in any event, Dr. Oaks said.
 {¶ 15} Dr. Oaks went on to state: *Page 7 
 In our view, capacity and competence are slightly different. Capacity is a medical determination, and competence is a legal determination.
 So from my read of this document, a psychiatrist could declare in her record that she lacks the capacity to make mental health decisions and proceed with treatment based on this document, but I believe it would be a very risky thing to do, that she could then challenge, and I don't think a responsible psychiatrist would proceed in that way, would probably file with the court for commitment.
 So, again, that kind of goes back to my earlier statement, that I don't find these to be of much value.
(Tr. 42-43.) Dr. Oaks also noted that appellant had checked a box indicating that by signing the power of attorney she was not consenting to her father admitting her to a health care facility for mental health treatment. Thus, even if operable, the power of attorney would not empower the attorney-in-fact to obtain any non-consensual mental health treatment in a health care facility in the event of a relapse.
 {¶ 16} The magistrate later noted on the record that "[s]ometimes people who are mentally ill have capacity to receive and process information; sometimes people who are mentally ill don't have capacity." "We had absolutely no testimony today on whether or not [D.F.] had capacity to receive and process information [in connection with the mental health power of attorney]." "So that particular issue I don't think was properly before the Court anyway * * *" (Tr. 55.)
 {¶ 17} "Mental illness" means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life. R.C. 5122.01(A). Section 5122.01(B) of the Ohio Revised Code provides, in pertinent part: *Page 8 
 "Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of the person's illness:
 * * *
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.
 {¶ 18} The state must establish one of these criteria by clear and convincing evidence in order to justify commitment. In re L.G., Franklin App. No. 06AP-453, 2006-Ohio-5043, ¶ 7. "Clear and convincing evidence" is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cincinnati BarAssn. v. Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, citing Cross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118, paragraph three of the syllabus. Where the burden of proof at the trial court level is clear and convincing evidence, the trial court's judgment will not be reversed on appeal as being against the manifest weight of the evidence where it is supported by some competent, credible evidence going to all the essential elements of the case.State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. *Page 9 
 {¶ 19} In the present case, the probate court found that appellant is subject to court-ordered hospitalization under both subparagraphs (3) and (4) of R.C. 5122.01(B). In her first assignment of error, appellant argues that the commitment order is against the manifest weight of the evidence. In her second assignment of error, appellant argues that outpatient commitment is not the least restrictive option for treatment of her illness. Because these assignments of error are interrelated, we will discuss them together.
 {¶ 20} The question that these assignments of error present is whether ADAMH proved, by clear and convincing evidence, that: (1) without the commitment order sought, appellant is unable to provide for and is not providing for her basic physical needs because of her mental illness and that appropriate provision for those needs cannot be made immediately available in the community; (2) appellant would benefit from outpatient treatment for her mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or herself; and (3) outpatient commitment is the least restrictive alternative available that is consistent with her treatment goals.
 {¶ 21} A trial court must use a "totality of the circumstances" test "to determine whether an alleged mentally ill person is subject to hospitalization under R.C. 5122.01(B)." In re Burton (1984),11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530, paragraph one of the syllabus. Factors to be considered by the court in a commitment hearing include, but are not limited to:
 (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight *Page 10 
into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.
Id. at 149-150. "A trial court, upon a finding that a person is subject to hospitalization, must determine the `least restrictive place of confinement in consideration of the patient's diagnosis and prognosis, preference of the patient and the projected treatment plan.'"Griffin v. Twin Valley Psychiatric Sys., Franklin App. No. 02AP-744,2003-Ohio-7024, ¶ 33, quoting State v. Williams (Dec. 21, 1999), Mahoning App. No. 98-CA-1; see, also, R.C. 5122.15(E).
 {¶ 22} Though she does not challenge the court's finding that she is a mentally ill person, appellant argues, in support of her first assignment of error, that ADAMH failed to prove, by clear and convincing evidence, that she is in need of hospitalization, in light of Dr. Oaks' testimony that appellant "seems to be doing well" at home, and that Dr. Oaks' understanding was that appellant was taking her medications as of the hearing date. (Tr. 22.) She argues that Dr. Oaks' testimony in this regard contradicts his other testimony, rendering his testimony inadequate to form the basis of the court's commitment order. Appellant also argues that if she can care for herself and is compliant with her medication regimen at home, as Dr. Oaks testified, then this demonstrates that she is not in need of hospitalization. In support of her second assignment of error, appellant argues that because she is compliant with her medicinal regimen, she has *Page 11 
executed a mental health power of attorney, and she can be readmitted to the hospital if she relapses, there is no need for a continued commitment and, therefore, the order is not the least restrictive option available for her treatment.
 {¶ 23} We note that Dr. Oaks stated that even with medication appellant still poses some risk of harm to others and herself because she retains her delusional thoughts. Dr. Hunter opined that without medication appellant poses a significant danger to herself and others. Both experts opined that appellant lacks insight into her mental illness and the need for treatment, and has historically only complied with her prescribed medication regimen and other treatment when forced to do so by court order. Thus, they concluded she is in need of outpatient hospitalization and the least restrictive environment that provides adequately for appellant's treatment needs and adequately safeguards the public is outpatient commitment through CSN, which provides much more intensive care than typical outpatient psychiatric treatment, including more frequent contact and closer monitoring.
 {¶ 24} Dr. Oaks testified that appellant's mental health power of attorney is not an adequate alternative to outpatient commitment because it may be revoked at any time, and it specifically does not authorize the attorney-in-fact to admit appellant to a mental health treatment facility. Moreover, Dr. Oaks explained, in the event of a relapse a prudent psychiatrist would seek a court order for commitment instead of following the commands of the attorney-in-fact.
 {¶ 25} The record contains no evidence contradicting these experts' opinions. Dr. Oaks' testimony on cross-examination, in which he stated he "understands" that appellant was in satisfactory condition as of the date of the hearing, does not render the balance of *Page 12 
his testimony contradictory and unreliable, as appellant asserts. The hearing took place merely eight days after appellant's discharge from the hospital, and Dr. Oaks never said that he had personal knowledge of appellant's condition on that date. In fact, he testified that he had last seen appellant in December 2007. Moreover, we note that as of the date of the continued commitment hearing, the trial court's previous commitment order had not yet expired. The undisputed testimony established that appellant tends to comply with her medication regimen and treatment plan only when probate court orders are in place. Thus, her compliance during the eight days following her discharge from the hospital is not particularly probative of whether or not she is in need of hospitalization.
 {¶ 26} Having reviewed the entire record in light of theBurton factors, we conclude that there is competent, credible evidence going to all essential elements of the case, which supports the probate court's determination that appellant is subject to continuing commitment under R.C. 5122.01(B)(3) and (4), and that outpatient hospitalization is the least restrictive option available. Therefore, appellant's first and second assignments of error are overruled.
 {¶ 27} Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
 PETREE and TYACK, JJ., concur. *Page 1